[No. 14506. In Bank. — January 20, 1892.]

## J. G. WICKERSHAM, APPELLANT, *v.* N. J. BRITTAN, RESPONDENT.

CORPORATIONS — ELECTION OF DIRECTORS — APPOINTMENT TO FILL VA-CANCY — ACTION BY STOCKHOLDER — CONSTRUCTION OF CODE. — Section 315 of the Civil Code, providing for an action to determine the validity of an election held by any corporate body, has application only to elections which are by the statute authorized to be made by the stockholders, and does not include an appointment made by the directors to fill a vacancy.

ID. — "ELECTION" DISTINGUISHED FROM "APPOINTMENT." — The term "election" carries with it the idea of a choice in which all who are to be affected with the choice participate, whereas from the word "appoint-ment" is understood that the duties of the appointee are for others than those by whom he is appointed. An "appointment" is generally made by one or more persons exercising delegated powers, while an "election" is the direct choice of all the members of the body from whom the choice is made.

ID. — "CORPORATE BODY." — The "corporate body" referred to in section 315 of the Civil Code is the corporation itself, and not the board of directors.

ID. — JURISDICTION OF SUPERIOR COURT — SUCCESSOR TO DISTRICT COURT — CONSTITUTIONAL LAW. — The superior court has jurisdiction, as the constitutional successor of the district court, to entertain proceedings under sections 312 and 315 of the Civil Code, notwithstanding the men-tion in those sections of the district court of the county or district in which the election is held. Section 11 of article XXII. of the constitu-tion is self-executing, and made all laws applicable to the former judi-cial system applicable to the judicial system created by the constitution until changed by legislation, and the constitution did not repeal those sections as inconsistent with it, but preserved them in force until changed by legislation.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*Lippitt & Lippitt, Henley & Swift, Wilcoxon & Bouldin, Crittenden Thornton,* and *F. H. Merzbach,* for Appellant.

*Graves & Graves,* and *James L. Crittenden,* for Respondent.

HARRISON, J.— The plaintiff commenced this action under the provisions of section 315 of the Civil Code for the purpose of determining the right of the defendant to be a director in the Bank of San Luis Obispo, a corporation organized under the laws of this state. In his petition he alleges the incorporation of the bank; that he is a stockholder therein; that at the annual election of directors on October 15, 1890, J. L. Crittenden, J. W. Smith, P. W. Murphy, C. A. Pitkin, and W. E. Stewart were elected directors for the year next ensuing; that on the fourteenth day of January, 1891, Pitkin tendered his resignation as such director; "that said resignation was handed to the said Crittenden, Stewart, and Murphy, who then and there assumed to be and act as members of the board of directors of said corporation, and to constitute a quorum thereof; that said Murphy was not then and there a member of said board, because he had resigned, and his resignation had been accepted and his successor had been elected"; "that thereafter the said Crittenden, Stewart, and Murphy, assuming to act as a board of directors of said corporation, and as a quorum thereof, passed a pretended resolution purporting to appoint the defendant, N. J. Brittan, a director of said bank, and since that time the said defendant, N. J. Brittan, has usurped and unlawfully exercised the office of a director of said bank"; and prayed "that the claim of said defendant, N. J. Brittan, to be a member of said board be adjudged to be utterly invalid and void." To this petition the defendant demurred, on the ground that

the court had no jurisdiction of the subject-matter of the action, and that the petition did not state sufficient facts to entitle the petitioner to any relief. The court sustained the demurrer, and dismissed the petition, and from the judgment entered thereon the plaintiff has appealed.

Section 315 of the Civil Code provides: " Upon the application of any person, or body corporate, aggrieved by any election held by any corporate body, the district court of the district in which such election is held must proceed forthwith to hear the allegations and proofs of the parties, or otherwise inquire into the matters of complaint, and thereupon confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice."

Section 302 of the Civil Code provides that the directors of a corporation must be elected annually by the stockholders or members, and sections 307 and 312 provide the manner in which such elections may be held, and in section 305 it is declared that " whenever a vacancy occurs in the office of director, unless the by-laws of the corporation otherwise provide, such vacancy must be filled by an appointee of the board."

It is contended by the respondent that the provisions of section 315 apply only to the annual elections by the stockholders, while the appellant contends that they are applicable as well to the appointment of a director to fill a vacancy.

There is a marked distinction of meaning between the words "election" and "appointment," which is recognized in legal as well as in political nomenclature. Each of the words indeed signifies choice or designation of some person to fill an office or discharge a duty, but the manner in which the selection or designation is to be made determines the word which should be used, and as words are but a symbolical expression of the act which they represent, the word which is used in any instance must be construed to signify the act which it is intended to represent, rather than in accordance with its

strict etymological meaning.   In *Sturgis* v. *Spofford*, 45
N. Y. 446, an act of the legislature provided that three
of the commissioners of pilots should be "elected" by
the members of the chamber of commerce, and the other
two by the presidents and vice-presidents of the marine
insurance companies of the city of New York, and it was
contended that this act conflicted with the provision of
the constitution which required that all officers whose
election or appointment was not provided for by the
constitution should be elected by the people or appointed,
as the legislature might direct.   The court, however,
said: "Although the word 'election' is used in the stat-
ute, it cannot be supposed that the legislature intended
it in any such sense as that word is used in the con-
stitution, or as the result of a choice by the ordinary
mode of voting by the people.   The mode prescribed by
the statute for selecting these officers is, in legal effect,
an appointment, and comes within the meaning of that
word as used in the constitution, and the misnomer of
the legislature cannot change the real character of the
act provided for."

The term "election" carries with it the idea of a choice,
in which all who are to be affected with the choice par-
ticipate, whereas from the word "appointment" we
understand that the duties of the appointee are for
others than those by whom he is appointed.   As distin-
guished from an election, an appointment is generally
made by one person, or by a limited number, acting
with delegated powers, while an election is the direct
choice of all the members of the body from whom the
choice can be made.   Bouvier, under the word "Elec-
tion," says: "Etymologically, election denotes choice,
selection *out of* the number of those choosing.   In com-
mon use, however, it has come to denote such a selection
made by a distinctly defined body."   In the American
and English Encyclopædia of Law, under the heading
"Appointment," it is said: "The appointment to a
public office is made by one or more possessing dele-
gated powers, as distinguished from 'election,' where the

right is exercised by many"; and the term "elect" is therein defined, "to select or choose by the popular voice or vote, as distinguished from 'appoint,' which is by an individual." In Rapalje and Lawrence's Law Dictionary, under the term "Appointment," it is said: "Appointment to an office or trust implies the conferring of the dignity by the act of one or more individuals having power to select the person appointed; election is the selection of the person by the votes of an entire class." "No latitude of construction can justify the reading of 'elected' as the synonym of 'appointed.'" (*Magruder* v. *Swann*, 25 Md. 214. See also *State* v. *Clarke*, 5 Nev. 111; *Police Commissioners* v. *Louisville*, 3 Bush, 602; *Speed* v. *Crawford*, 3 Met. (Ky.) 207; *State ex rel. Coogan* v. *Barbour*, 53 Conn. 76; *Conger* v. *Gilmer*, 32 Cal. 75.) The fact that the selection of the officer is made by ballot is not controlling. This is but a means that the appointing body may adopt for making its choice of the individual to be appointed, nor does a direction to the appointing body to "elect" the one whom it will designate for the office require such election to be made by ballot, or render its act any the less an "appointment." (*Conger* v. *Gilmer*, 32 Cal. 75.)

Although the words are sometimes used interchangeably in statutes, yet, for the purpose of giving construction to the statute, courts must give to the word used a meaning according to the connection in which it is found. In section 308 the Civil Code provides that, "immediately after their *election*, the directors must organize by the *election* of a president, who must be one of their number, a secretary, and treasurer." Here the word "election," as first used, refers to the election by the stockholders, and is the proper term to signify the choice by the votes of the entire body, whereas in its subsequent use it signifies only the appointment by the board of its own officers. In section 303, authority is given to a corporation to provide by its by-laws for "the manner of election and the tenure of office of all officers other than the directors." This provision also has refer-

ence, technically, to the appointment of such officers, rather than to an election of them in the mode provided by statute for the election of directors.

We are of the opinion that the provisions of section 315 have application only to the elections which are by the statute authorized to be made by the stockholders, and that it would violate recognized rules of construction to include under that term an appointment made by the board of directors to fill a vacancy. It cannot have been intended by the legislature that the courts should super-vise the appointment of all subordinate officers and em-ployees of a corporation that may be made by the board of directors; but if the contention of the appellant in the present case is correct, we see no good reason for not holding that the term " election," as found in section 315, is applicable also to such appointments as are made under the provisions of sections 303 and 308.

This construction is also sustained by the fact that it is only when some one is aggrieved by an election held by " any corporate body," that section 315 authorizes the court to take any action. The " corporate body " here referred to is the corporation itself, and not the board of directors. (Morawetz on Private Corporations, sec. 33.) " The persons signing the articles, and their associates and successors," are by the statute declared to be a " body politic and corporate " (Civ. Code, sec. 296), while the board of directors are only the persons by whom " the corporate powers, business, and property " of the corporation are to be " exercised, conducted, and controlled " (Civ. Code, sec. 305); and the elections which the statute authorizes to be held by the corporate body are those at which only the stockholders or members vote.

The superior court had jurisdiction to entertain this proceeding. Sections 312 and 315 of the Civil Code as amended in 1878 conferred such jurisdiction upon the district court of the district in which the election was held. Upon the adoption of the constitution of 1879, the district courts theretofore existing were superseded by the superior courts, and the superior court was given

original jurisdiction "of all such special cases and proceedings as are not otherwise provided for." Article XXII., section 11, of the constitution also provided that "all laws relative to the present judicial system of the state shall be applicable to the judicial system created by this constitution until changed by legislation."

The effect of this section was, by a single comprehensive provision, to preserve and adopt for the courts created by the new constitution the statutory procedure that was then existing with reference to the courts which were by that instrument abolished, and to authorize that procedure in all rights of action that were to be determined under the new constitution. For the purpose of adapting the phraseology of the several codes to the new nomenclature of the courts provided by the constitution, the legislature, in 1880, amended the greater portion of the sections in which were the names of the old courts by substituting therefor the names of the new courts. But its omission to make such change in any particular section did not have the effect to prevent the superior court from exercising the jurisdiction over any right of action which had been conferred upon it by the constitution. During the interim between January 1, 1880, and the date of any such amendment the superior court could rightfully entertain and hear all proceedings and actions instituted therein under the jurisdiction conferred upon it by the constitution. The jurisdiction thus conferred was not such a provision of the constitution as required legislation to *enforce* it (art. XXII., sec. 1), and the laws for the exercise of such jurisdiction were not "inconsistent" with the constitution, and did not cease upon its adoption, but by the provision of section 11 of article XXII. were expressly preserved in force until changed by legislation.

In *Fraser* v. *Alexander*, 75 Cal. 147, it was held that the act of March 30, 1874, under which the proceedings were instituted, had been superseded by the provisions of the County Government Act of 1883; and what was said in the opinion respecting the effect of section 1 of

article XXII. of the constitution was *obiter dictum*, inas-
much as, upon holding that the provisions of that act
had been thus superseded and changed by legislation,
there was no opportunity for the court to consider or
determine the effect of the constitutional provision upon
the statute existing at the date of its adoption.

The judgment is affirmed.

DE HAVEN, J., MCFARLAND, J., GAROUTTE, J., SHARP-
STEIN, J., and PATERSON, J., concurred.